## KAUFMAN et al. v. JOHN BLOCK & CO., Inc., et al.

District Court, S. D. New York.
March 12, 1948.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald McKernan and Martin J. McHugh, both of New York City, of counsel), for libelants.

Arthur A. Atha, of New York City, for respondents.

Dow & Symmers, of New York City (Edwin K. Reid, of New York City, of counsel), for respondent impleaded.

GODDARD, District Judge.

Samuel J. Kaufman and Benjamin Vinson, copartners doing business under the trade name and style of Kaufman Company, filed a libel in admiralty against John Block & Co., Inc., John Block, and Edward S. Hidden, respondents.

John Block & Co., Inc., impleaded Louise T. Dodge as a respondent. Hidden has not been served as it has been reported that he has left the jurisdiction.

The suit is brought to recover prepaid freight moneys and damages alleged to have been sustained by reason of the respondents' failure to ship or deliver the cargo entrusted to them for that purpose. The libel sets forth two alleged causes of action.

On exceptions to the libel by respondents, Judge Conger dismissed the Second cause of action as beyond the jurisdiction of admiralty but held that the First cause of action was for breach of contract to carry goods by sea and is within the jurisdiction of admiralty, D.C., 60 F.Supp. 992, and I regard that as the law of this case and it so remains upon the facts as they appear on the trial.

Prior to March, 1943, the respondents, John Block & Co., Inc., Edward S. Hidden, and John Block represented themselves as the agents for a corporation which they stated was Marie Anna, Inc. They represented that this corporation was the owner or charterer of the schooner Marie Anna, and purporting to act as agents for the corporation, they solicited bookings from various exporters and foreign trade for-

warders for the carriage by sea of freight and general cargo to various points in South America and Central America. The respondents represented that these bookings were then open on the vessel Marie Anna. Sometime prior to March, 1943, the respondent, John Block, called at the offices of the libelants for the purpose of soliciting freight bookings, and stated to these libelants that the vessel Marie Anna was lying at the port of Charleston, South Carolina, and was ready to receive cargo for Barranquilla, Colombia.

The libelants requested Block to furnish them with the necessary routing instructions to Charleston, and the names of the consignees at that place. Block gave them the shipping instructions and the libelants, pursuant to those instructions, forwarded the goods to Charleston, and upon arrival of the cargo at Charleston, delivery of it was receipted by two bills of lading, both issued by Marie Anna, Inc., and both dated March 5, 1943. The bills of lading were signed by Frank Sweetman, captain of the yacht Marie Anna.

The libelants prepaid the freight to the respondents by two checks; one of them was for $1,372, and the other one was for $1,649.22. That is a total of $3,021.22.

The Marie Anna never sailed with the libelants' cargo nor did the respondents substitute any other vessel to carry libelants' cargo, and respondents have refused to refund the moneys. As a result of the failure of the Marie Anna to carry their cargo the libelants were put to the expense of retrieving, storing and reshipping their goods.

The reason why the Marie Anna never left Charleston was because of a restraining order prohibiting her to leave her anchorage because she was entered with the customs authorities as a yacht and was thus prohibited from engaging in any cargo-carrying trade.

Prior to November 16, 1942, the owner of the Marie Anna was an alleged corporation known as M. S. Vencedor, Inc., of which Hidden was president and principal stockholder. In September, 1942, Hidden obtained a loan from Louise T. Dodge, respondent impleaded, and on October 1st a mortgage on the Marie Anna was given as security for the loan. About this time the United States Maritime Commission conducted an investigation and found that the Vencedor Corporation was violating the provisions of the Intercoastal Shipping Act, 46 U.S.C.A. § 843 et seq., in that it failed to file a schedule of rates and classifications, etc., with the Maritime Commission in connection with its water carrying activities which it was carrying on. A Cease and Desist order from further violation was entered by the Maritime Commission in November, 1942. The result of this was that the M. S. Vencedor, Inc., had to retire at least temporarily from the shipping business. Finally, as a result of pressure brought to bear by the Vencedor Shippers Protective Committee, which had been formed to prosecute their claims, Hidden entered into a stipulation with the United States Maritime Commission whereby he agreed not to transfer any of the assets of M. S. Vencedor, Inc., until all the shippers' claims had been satisfied. This stipulation was entered into around November 16, 1942. On January 28, 1943, the Shippers Protective Committee secured a restraining order against the M. S. Vencedor and Hidden, enjoining them from transferring the title to any Vencedor assets, and from permitting the Marie Anna to leave the jurisdiction of the United States. Notwithstanding this restraining order, Hidden transferred the title to the yacht Marie Anna from H. S. Vencedor, Inc., to the respondent impleaded, Louise T. Dodge, by a bill of sale dated November 16, 1942.

Immediately upon passing title to Mrs. Dodge, Hidden and his associates obtained a bareboat charter of the vessel, under which terms he was to have complete operation, management and control of the Marie Anna, and I find that after this bareboat charter had been entered into, the actual operation and the management of the vessel was carried on by the respondents Hidden and Block, John Block & Co., Inc., as partners, or rather as joint or co-adventurers, though they purported to act in the management and operation of the vessel as agents for Marie Anna, Inc., which they represented to be the charterer of the vessel.

The respondents do not allege the existence of any such corporation as "Marie Anna, Inc.", nor have they proved that such a corporation ever existed. The inference is, I think, that no such corporation ever did exist except on stationery in the possession of John Block & Co., Inc., and Block and Hidden.

There is a sharp dispute as to the facts and the decision depends upon what actually took place. Mrs. Dodge and Freeman Dodge were on the stand for one or more days and impressed me as unusually conscientious witnesses and entirely worthy of belief, and I do not at all doubt Mr. Kaufman's testimony and I accept their statements as being a correct version of what was said and what was done. Mr. Block's testimony seemed to me to be evasive and not convincing. I was convinced that Mrs. Dodge, a registered trained nurse, employed at one of the large hospitals in New York, was quite inexperienced in business matters, and that she signed a number of letters and documents prepared by the respondents which she neither read nor understood, and that she signed them relying solely upon the advice of the respondents in whom she at that time had implicit confidence.

 I do not think it necessary to discuss the facts in detail, but after considering all the evidence, and the reasonable inferences, I am convinced that the Marie Anna was operated at the time in question by the respondents and that the money received from libelants was received by them for themselves and as joint adventurers in the operation of the Marie Anna.

 Mrs. Dodge is not liable. The respondents were operating the Marie Anna in their own interest and not as agents for Mrs. Dodge.

The petition against the impleaded respondent, Louise T. Dodge, is dismissed without costs.

The libelants may have a decree against the respondents, excluding Hidden, who has not been served, for the amount of freight money paid by libelants to respondents, and for the damages sustained by the libelants in retrieving, warehousing, and reshipping their goods. The amount will be referred to a Commissioner for determination.

I think that is sufficient for the present purposes and I shall prepare and file findings of fact and conclusions of law. Any proposed findings of fact and conclusions of law by libelants or respondent-impleaded to be submitted promptly with three days' notice to the respondents.